# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **REX D TOWNSLEY ET AL** | **CASE NO. 2:21-CV-00293** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **OHIO SECURITY INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 26] filed by defendant Ohio Security Insurance Company ("Ohio") and seeking a ruling on certain insurance coverage disputes. Plaintiffs Rex D. Townsley, Todd A. Townsley, and The Townsley Law Firm LLP (collectively, "Townsley") oppose the motion. Doc. 41. Also before the court is a Motion for Partial Summary Judgment [doc. 37] filed by Townsley and seeking a ruling that it is entitled to coverage under the policy's Civil Authority provision. Ohio opposes this motion. Doc. 61.

## I.
### BACKGROUND

This suit arises from an insurance claim relating to Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020, and Hurricane Delta, which made landfall in the same area on October 9, 2020. Townsley is a law firm located in Lake Charles, Louisiana, and had at all relative times a commercial policy with Ohio providing, inter alia, business interruption insurance. Townsley alleges that, as a result of the property

damage, power outages, and mandatory evacuation orders caused by both storms, it suffered a loss of income and is owed coverage under its business interruption insurance. It also asserts that it is entitled to bad faith penalties under Louisiana Revised Statutes §§ 22:1892 and 1973 because Ohio has failed to pay anything on its business interruption claim. Doc. 1.

Ohio received Townsley's submissions on November 6, 2020, which itemized losses totaling $614,061.74 from Hurricane Laura in the categories of business income, dependent properties, off premises power failure, and extra expense; and $217,716.72 in the same category from Hurricane Delta. Doc. 26, att. 2, pp. 2, 161–65, 253–57. Townsley also responded to Ohio's request for additional information on December 9, 2020. *Id.* at 294–95. On January 25, 2021, Ohio replied with a letter detailing its findings following a review of Townsley's claim and all information provided. *Id.* at 296–323 (Laura claim); *id.* at 324–41 (Delta claim). There it denied coverage under the policy's business income, extra expense, and civil authority provisions, and requested additional information to investigate Townsley's claims for coverage under the dependent properties and off-premises power outage provisions. *Id.* Townsley then filed suit, and since that time Ohio has not made any payment on the claims. Doc. 1.

Ohio now brings a motion for partial summary judgment, asserting that: (1) Townsley is not entitled to coverage under the Business Income and Extra Expense provisions because it did not cease business operations as a result of physical property

damage; (2) if Townsley is entitled to coverage under the Civil Authority provision, then that coverage is limited; (3) if Townsley is entitled to coverage under the Dependent Properties provision, then that coverage is likewise limited; (4) Townsley's recovery under the Off-Premises Power Outage provision is limited to $25,000 per storm; and (5) no coverage is owed under the policy's Electronic Data and Interruption of Computer Operations provision. Doc. 26, att. 1. Townsley agrees on the limit under the Off-Premises Power Outage provision but otherwise opposes the motion, asserting that there is at least a question of fact on its entitlement to each type of coverage. Doc. 41. It also brings its own motion for summary judgment, seeking a ruling that it is entitled to coverage under the policy's civil authority provisions. Doc. 37.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written."

*Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). When the terms are ambiguous, however, that ambiguity must be construed against the insurer and in favor of coverage. *Id.* at 589–90. The contract must also be interpreted as a whole, with each provision reviewed in light of the others. *Calcasieu Parish Sch. Bd. v. Miller*, 92 So.3d 1200, 1202 (La. Ct. App. 3d Cir. 2012).

Relevant to these motions, the parties agree that Townsley is limited to a maximum amount of $25,000 per storm in coverage under the Off-Premises Power Outage provision. They dispute Townsley's coverage under the Business Income and Extra Expense, Civil Authority, and Dependent Properties provisions, and have not responded as to the Electronic Data and Interruption of Computer Operations provision. Accordingly, the court applies the above principles to interpret this insurance contract.

### A. Business Income and Extra Expense

Under the Business Income and Extra Expense provisions, the policy provides:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." **The suspension must be caused by direct physical loss of or damage to property at the described premises.** The loss or damage must be caused by or result from a Covered Cause of Loss.
> . . . .
> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no **direct physical loss or damage to property at the described premises.** The loss or damage must be caused by or result from a Covered Cause of Loss.

Doc. 26, att. 2, pp. 42–43 (emphasis added).

Ohio maintains that Townsley is not entitled to coverage under these provisions because it did not cease business operations as a result of physical property damage. In interrogatory responses provided on September 3, 2021, Townsley was asked to "[d]escribe in detail all physical property damage for which you seek insurance coverage from Ohio Security in this lawsuit," and responded:

> Plaintiff's office operates completely "paperless," with all files accessible through its NAS drive. The Equipment Room where the NAS drive was stored had ceiling tiles that fell and resultant water intrusion as a result of Hurricane Laura. The NAS drives (2) were relocated prior to the storm, but could not be reinstalled due to the water intrusion. If the drives were damaged by water, the Firm would lose all of its files. The NAS drives were also inaccessible during the power outage and could not be returned to Lake Charles until there was reliable power. Even with the drives evacuated [to Lafayette, Louisiana], remote access was inoperable due to lack of internet in the area. The drives could not be accessed and work could not be performed remotely or otherwise until power was restored in Lake Charles.
> **Even once power was restored and the NAS drives were returned to Lake Charles, the drives had to be relocated to another building owned by Plaintiff due to the damage to the Equipment Room where they were previously located. The Firm had to modify the new location to house the drives.**
> The Firm also had damage to its outdoor sign. The Firm was paid by Defendant for the sign and its replacement has been ordered though not yet installed.
> The Firm had extra ceiling tiles in stock and had its own maintenance performed to replace the fallen tiles in the Equipment Room.

Doc. 26, att. 3, pp. 2–3 (emphasis added). Ohio asserts that there is no basis for coverage under this provision and that Townsley offers no factual support for the notion that any damage to the property caused the suspension of operations. Townsley maintains that it is entitled to this coverage, however, because the water intrusion prevented the drives from

-6-

being restored to their original location. From the undisputed facts, the court cannot determine (1) the extent to which Townsley could have become operational before any physical damage preventing restoration of the drives was remedied and (2) whether lack of access to the drives was a cause of Townsley's suspension of operations. Accordingly, summary judgment on this coverage dispute will be denied.

### B. Civil Authority

The parties both move for summary judgment on Townsley's entitlement to coverage under the policy's Civil Authority provision. This provision states:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.
> The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage beings.

Doc. 26, att. 2, p. 44.

Townsley has claimed coverage under this provision and cites the mandatory evacuation orders for both storms, issued on August 25 and October 7, 2020, as triggering events. *See* doc. 41. It also maintains that the 72-hour waiting period is triggered with the issuance of the civil authority order rather than with the actual disaster, and that it is entitled to summary judgment affirming its coverage under this provision for both storms because the orders were issued in anticipation of physical damage that became reality. *Id.* Ohio, on the other hand, contends that Townsley cannot establish coverage under this provision as

a matter of law. Alternatively, it asserts, even if coverage is found based on the evacuation orders, it is triggered with landfall of the respective storms and thus the 72-hour waiting period begins on those dates. Doc. 26, att. 1; doc. 61.

As both parties are aware, this court recently denied a Rule 12(b)(6) motion brought against a business's claim for civil authority coverage based on the same evacuation orders. *Pathology Lab., Inc. v. Mount Hawley Ins. Co.*, __ F.Supp.3d ___, 2021 WL 3378596 (W.D. La. Aug. 3, 2021). Ohio contends that this ruling is contrary to law and emphasizes *Dickie Brennan & Co., Inc. v. Lexington Insurance Co.*, 636 F.3d 683 (5th Cir. 2011), where the Fifth Circuit held that civil authority coverage was not triggered by a mandatory evacuation order issued in anticipation of Hurricane Gustav. As the court noted there, however, New Orleans suffered only minimal damage from that storm and the evacuation was lifted shortly thereafter. Here, however, significant damage following Hurricane Laura required extension of the order even after the storm had passed. The mandatory evacuation was continued by the parish until September 11, 2020. Doc. 37, att. 4. The mayor of Lake Charles also issued an executive order at some point before September 4, 2020, requiring all businesses not essential to hurricane recovery to remain closed, and then extended the order until September 11. Doc. 37, att. 5. No such extension as to Hurricane Delta has been shown, however.

Based on the above documents, the court concludes that Townsley is entitled to civil authority coverage for Hurricane Laura. The triggering order and date, however, cannot be

determined from the present record—the court agrees that based on the plain wording of the policy, the triggering event is the civil authority's action rather than the storm itself. However, it is unclear when the order was extended as a result of the storm damage. In the absence of this information, the court cannot determine whether coverage should begin with the original evacuation order or an extension soon thereafter. Accordingly, the cross-motions for summary judgment will be granted in part and denied in part as to this claim.

### C. Dependent Properties

Townsley also seeks coverage under the policy's Dependent Properties provision. This provision covers actual loss of business income "due to physical loss or damage at the premises of a dependent property caused by or resulting from any covered cause of loss." Doc. 26, att. 2, p. 46. Coverage does not begin until "72 hours after the time of direct physical loss or damage . . . at the premises of the dependent property" and ends on the date when the property is repaired, rebuilt, or replaced. *Id.* at 47.

Ohio does not dispute that Townsley may be entitled to coverage under this provision but asks that the court grant summary judgment to the effect that coverage is subject to the policy limits of a maximum $50,000 per storm and that, due to the 72-hour waiting period, the earliest it could begin is August 30, 2020, for Hurricane Laura and October 12, 2020, for Hurricane Delta. Townsley does not dispute the applicability of the 72-hour waiting period's applicability but asserts that the policy limits are ambiguous.

Townsley's coverage under dependent properties was increased through a 19-page Businessowners Property Plus Extension Endorsement. Doc. 26, att. 2, pp. 125–43. The first page states: "This summarizes the various coverages provided by this endorsement; no coverages are given by this summary. Actual coverage descriptions are within the form." *Id.* at 125. It provides that Dependent Properties Coverage is limited to "$50,000 or 30 Days Actual Loss Sustained." *Id.* On page 4 of this endorsement, however, which shows the actual changes to the Dependent Properties provision, the Coverage subsection reads:

> The most we will pay under this Additional Coverage is the lesser of:
> (a) $50,000; or
> (b) 30 days actual loss sustained after direct loss or damage to the property.

*Id.* at 128.

Despite the summary page's failure to include the vital "lesser of," that page clearly indicates that the actual coverage descriptions are found in the form. The form limits coverage to the lesser of 30 days of actual loss or $50,000. The court finds no ambiguity and grants Ohio's motion in this regard, limiting Townsley's recovery as described above for each storm under the dependent properties provision.

### D. Electronic Data and Interruption of Computer Operations

Finally, Ohio seeks summary judgment on Townsley's lack of coverage under the Electronic Data and Interruption of Computer Operations provisions. The Electronic Data provision covers "the cost to replace or restore 'electronic data' which has been destroyed or corrupted by a Covered Cause of Loss." Doc. 26, att. 2, p. 48. Meanwhile, the

Interruption of Computer Operations provision extends Business Interruption and Extra Expense coverage "to apply to a suspension of 'operations' caused by an interruption in computer operations due to destruction or corruption of 'electronic data' due to a Covered Cause of Loss." *Id.*

According to Ohio, Townsley originally claimed coverage under these provisions. Since that time, however, it has admitted that it did not lose any electronic data as a result of the hurricanes. Doc. 26, att. 3, p. 4. Townsley offers no response to this portion of Ohio's motion and the court agrees that no coverage is owed under the above provisions. Accordingly, the motion will be granted in this regard.

## IV.
### CONCLUSION

For the reasons stated above, both Motions for Partial Summary Judgment [docs. 26, 37] will be **GRANTED IN PART** and **DENIED IN PART**.

**THUS DONE AND SIGNED** in Chambers on this 20th day of October, 2021.

*/s/ James D. Cain, Jr.*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**